**JANSSEN v. SHOWN et al.**

No. 6372.

Circuit Court of Appeals, Ninth Circuit.

Nov. 9, 1931.

Harry A. La Berge, Joseph C. Cheney, Elwood Hutcheson, and La Berge, Cheney & Hutcheson, all of Yakima, Wash., and R. W. Wilbur, H. B. Beckett, F. C. Howell, E. K. Oppenheimer, and Wilbur, Beckett, Howell & Oppenheimer, all of Portland, Or., for appellant.

Jay Bowerman and F. M. De Neffe, both of Portland, Or., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

This action was instituted by appellant against the appellees to recover damages on an injunction bond executed by X. E. Hall as principal and the appellees as sureties in a suit brought by Hall and others against appellant and others in the circuit court of the state of Oregon for Wheeler county. The trial court sustained a demurrer to the amended complaint of appellant and entered a judgment dismissing the action. To review the record of this judgment, appellant brings the case here.

The pertinent facts as disclosed by the amended complaint and its supporting exhibits are these: In November, 1928, appellant and Hall made an exchange of properties whereby appellant conveyed to Hall several ranches and valuable personal property in the states of Washington and Montana, in consideration of which Hall conveyed to appellant a ranch in Wheeler county, Or., together with certain valuable personal property, including 360 head of cattle. In January, 1929, Hall commenced an action at law against appellant in the superior court of the state of Washington for Yakima county to recover damages for fraud alleged to have been perpetrated upon him in the exchange transaction. Appellant filed an answer denying all fraud on his part, and by way of cross-complaint sued Hall for damages for fraud alleged to have been practiced by him on appellant in the same transaction. On February 15, 1929, and while the Yakima county case was still pending, Hall brought a suit in equity in Wheeler county, Or., for a rescission of the exchange transaction because of the identical fraud alleged by him in the Yakima county case, and sued out an injunction restraining appellant from selling or otherwise disposing of any of the Oregon properties included in the exchange. The bond executed by Hall as principal and appellees as sureties to secure this injunction is the bond constituting the basis of appellant's present action. The injunction remained in force from February 15, 1929, until May 28, 1929, on which latter date the Wheeler county suit and the injunction were dismissed. On May 28, 1929, and immediately prior to the entry of the order dismissing the suit, the plaintiffs and the defendants therein entered into a compromise or an adjustment of their rights involved in the injunction proceeding, and signed a stipulation of far-reaching effect upon their respective interests. Among other things, it was stipulated that the cause pending in the circuit court for Wheeler county should be dismissed, with prejudice. The stipulation was not filed in the injunction case, but on the day of its execution, and shortly thereafter the court entered in the cause the following order: "Now on this 28 day of May, 1929, this cause came on to be heard upon an application of the plaintiffs and defendants both appearing in court, asking for an order dismissing this suit. It is hereby ordered, adjudged and decreed by the Court that this cause be and the same is hereby dismissed with prejudice." This order bore the O. K. of counsel for appellant, who was the defendant in the injunction case, and who had appeared and filed an answer therein. Appellant contends that he is entitled to recover from the appellees as sureties on the injunction bond certain damages which he claims he sustained by reason of the injunction on the ground that the same was issued wrongfully and without sufficient cause. On the other hand, appellees insist that they are not liable on the bond because the dismissal of the injunction proceeding was pursuant to an agreement of the parties and was not the result of any trial on the merits nor of the voluntary act of the plaintiff alone. These contentions give rise to the only question for decision in the case.

The injunction bond in question was drawn in strict conformity with section 6-402 of the Oregon Code Annotated 1930, which reads: "An injunction may be allowed by the court, or judge thereof, at any time after the commencement of the suit and before decree. Before allowing the same, the court or judge shall require of the plaintiff an undertaking, with one or more sureties, to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same be wrongful or without sufficient cause."

▮▮ May the parties to an injunction suit where such a bond is executed enter into a voluntary agreement in the nature of a compromise of the litigation involved, and by their joint action, but without the consent or acquiescence of the sureties on the bond, bring about the dismissal of the suit, and thereby create a liability against the sureties on the bond without any judicial determination of the merits of the controversy or of the propriety of the injunction? Ordinarily, the question of whether an injunction is wrongfully or improvidently sued out is and must be determined in the injunction suit, and the judicial determination in this regard is the basis for the holding that the sureties on the bond are bound thereby and may not, in an action against them on the bond, relitigate the rightfulness or wrongfulness of the injunction. In Oelrichs v. Williams, 15 Wall. 211, 229, 21 L. Ed. 43, the Supreme Court of the United States lays down this rule: "The appellants cannot go behind the decree in the case in which their bonds were given. The law and the facts of that case, as settled by the court, are conclusive of their rights in this proceeding. They cannot be permitted to raise any question as to either."

In Fullerton v. Pool, 9 Wyo. 9 59 P. 431, 433, the Supreme Court of Wyoming declared: "It is a well settled principle that in an action upon an injunction bond the defendants are concluded by the decree upon the question whether or not there was any right to an injunction, and they are not at liberty to reopen the questions which were the subject-matter of the injunction suit. In such an action, matters which go to the merits of the injunction suit are not admissible as a defense."

Numerous authorities to the same effect might be cited. The only case cited by appellant in support of his position that the rightfulness or wrongfulness of the injunction may be litigated and determined independently in the action on the bond against the sureties is Olds v. Cary, 13 Or. 362, 10 P. 786, 787. This case, as we read it, merely passes upon a question of pleading, and does not support the proposition that the rightfulness of the injunction may be litigated independently in an action on the bond. The gist of the holding in the case is found in this language: "The fact that the injunction was wrongful, or without sufficient cause, should have been alleged. The dissolution of it by the court was evidence of its being wrongful, and should have been introduced as evidence, and not alleged as the substantive fact. A moment's reflection will convince an attorney that this view is correct."

In Large v. Steer, 121 Pa. 30, 15 A. 490, 491, it is said: "The sureties in an injunction bond assume certain obligations. At the same time they have rights which must be respected, and of which they cannot be deprived without their consent. They are entitled to have the case against their principal tried according to the forms of law, and a final decree or judgment entered against him in court. Their liability consists in satisfying any judgment their principal may be condemned to pay. Until there is such a final determination of the equity suit as shows that the injunction was wrongfully issued, I do not see how an action would lie against the principal in the bond, much less against his sureties."

It is well settled, however, that sureties on an injunction bond assume the hazard of a voluntary dismissal of the action by their principal, the plaintiff in the case. If he, acting independently and without the connivance or consent of the defendant, voluntarily dismisses his suit, his action is binding on the sureties, and conclusively establishes as against them the wrongfulness of the injunction. But, where the parties agree upon a settlement of the controversy involved in the case, and stipulate for a dismissal of the suit, and the suit is actually dismissed with prejudice upon the application of both plaintiff and defendant, a very different situation is presented and which the authorities fully recognize. We do not attach much importance to the fact that the stipulation between the parties was not filed in the case. It affirmatively appears from the amended complaint that the joint application for dismissal by both plaintiffs and defendants in the case followed almost immediately upon the execution of the stipulation, and the order of dismissal was approved by the defendants' counsel. Whilst it is alleged in the amended complaint that the stipulation was never filed in the case, it is not alleged that the case was not dismissed pursuant to the stipulation. On the contrary, it appears that the appellant seeks to avoid the effect of the stipulation by alleging that Hall failed to discharge certain obligations assumed by him in the compromise arrangement. That the dismissal of the injunction suit was the direct result of the stipulation seems perfectly plain. At any rate, the suit was dismissed with the defendants' consent and approval, and this without any judicial action upon the merits of the controversy or of the propriety of the injunction. The suit was not dismissed by the voluntary act of the plaintiffs therein, for the dismissal order recites that the dismissal was "upon the application of the plaintiffs and defendants both appearing in court, asking for an order dismissing this suit," and this order, as we have already said, followed immediately upon the signing of the stipulation, one of the provisions of which was that that identical case should be dismissed with prejudice. It is suggested by appellant's counsel that the dismissal was not the result of the stipulation because paragraph 14 thereof provided that the stipulation was not to be effective until certain conveyances were made by Hall to a trustee; that prior to such conveyances the actions were to remain in statu quo; that Hall did not make the conveyances as agreed, and consequently the dismissal was merely the voluntary act of the plaintiffs. This argument is more plausible than sound. If the plaintiffs had gone into court alone and moved to dismiss the case prior to the making of the stipulated conveyances, there would be merit in the contention, but, where the parties acting jointly go into court in advance of the conveyances and unite in an application for the dismissal, it is apparent that they had

waived the provisions of the stipulation with respect to the conveyances. They cannot take this premature action by mutual consent and thereby bring about a dismissal of the suit without any determination of its merits and then plead the failure to make the conveyances as a basis of recovery against the sureties on the injunction bond. Let it not be forgotten that the sureties on the injunction bond were not parties to the stipulation pursuant to which the suit was dismissed by the voluntary joint action of both plaintiffs and defendants, and the injunction was dismissed without any legal determination of the merits of the controversy or the rightfulness of the injunction. It does not amount to a judicial determination of the merits of the litigation that one of the litigants, after the suit was dismissed, failed to discharge some of the obligations assumed by him in the stipulation pursuant to which the case was amicably dismissed. In Beech on Injunctions, p. 197, § 180, it is said: "Also the entry of an ex parte order by plaintiff discontinuing the action without defendant's consent or payment of costs by plaintiff is equivalent to a determination that plaintiff was not entitled to the injunction granted therein. But a discontinuance of an action upon the agreement of the parties where the plaintiff does, or does not, pay the defendant's costs does not operate as a final decision that the plaintiff was not entitled to the injunction order when it was granted. And before there can be a recovery of damages on the bond it must be determined by the judgment, or something equivalent thereto, that plaintiff was not entitled to the injunction; it is not sufficient that this appears by the facts developed on the trial, but it must become a part of the court's decision."

In High on Injunctions (4th Ed.) vol. 2, p. 1598, § 1648 A, the rule is laid down in this language: "But where the voluntary dissolution of an injunction by the plaintiff is with the consent of the defendant, he waives his rights under the bond and cannot afterward maintain an action upon the bond upon the ground that the injunction was wrongfully granted."

In 14 R. C. L. p. 475, § 175, it is said: "And, though it is a rule that the voluntary dismissal by the plaintiff of an action in which he has obtained a temporary injunction or restraining order is such a breach of the injunction bond as gives the defendant a right of action thereon, it does not apply to a dismissal by amicable and voluntary agreement of the parties, as the principle that a voluntary dismissal is confession that there was no right to the injunction is not applicable in the latter case. Such a requirement is said to be based on just and sound principles of law. The givers of the bond only agree that it shall become liable for damages in the event the person suing out the injunction shall wrongfully do so. Until there has been a final determination of the suit in which the bond is given, it cannot be definitely ascertained as to whether or not there is, or will be, any liability on the bond."

In Large v. Steer, supra, the court had before it an action against the sureties on an injunction bond, and it was there held: "As a general rule, the dismissal of a bill by the agreement of the parties is not the equivalent of a decision upon the merits. * * * That this must be the rule as regards the sureties in an injunction bond can hardly be doubted. Were it otherwise their liability could be fixed by the agreement of the parties, without their assent, or even their knowledge, instead of by the judgment or decree of the court, as contemplated and tacitly understood when they signed the bond."

In St. Joseph & Elkhart Power Co. v. Graham, 165 Ind. 16, 74 N. E. 498, 499, 6 Ann. Cas. 399, the Supreme Court of Indiana had before it an action against the sureties on an injunction bond. In the course of the opinion it is held: "When, however, the dismissal of the action is by an amicable and voluntary agreement of the parties, the same is not a confession by the plaintiff that he had no right to the injunction granted, and does not operate as a judgment to that effect. * * * It was said in Columbus, etc., Ry. Co. v. Burke [54 Ohio St. 98, 43 N. E. 282, 32 L. R. A. 329], supra: 'When a plaintiff obtains an injunction by giving a bond to answer for such damages as may be caused the defendant by its allowance, and afterward, voluntarily and without the consent of the defendant, dismisses his action, there is much reason for holding that he should be estopped to say, in an action on the bond for the recovery of damages, that it has not been decided that the injunction ought not to have been granted. For in such case he by his own act has prevented the defendant from having such a decision. And such is the substance of the holding in the various cases cited by counsel for the defendant in error. But none are cited, and we have found none, that the same rule applies where the dismissal is with the consent of the defendant. And there is not the same reason for holding that

it should. In such case the defendant has an opportunity to insist that, before the dismissal is had, the court determine whether the injunction ought to have been granted, so that an action may be prosecuted on the bond, if such is his purpose. If he fail to do this, and consents to the dismissal of the action, his conduct is consistent with the inference that he intends to waive any right he may have on the bond. * * * In all the cases with which we are familiar or that have been cited in argument, the courts have required, as a necessary predicate, in an action on the bond, a judicial determination of the merits of the case in favor of the defendant in the action in which the bond was given, either in a trial on the merits or on a motion to dissolve the injunction, except those where the plaintiff dismisses his action without the consent of the defendant. In the excepted cases, for reasons just given, he is estopped from insisting on the terms of the bond, and in none others.' "

See, also, Palmer v. Foley, 71 N. Y. 106; Cassem v. Ernst, 84 Ill. App. 70; Id., 183 Ill. 137, 55 N. E. 646.

Authorities to the same effect might be cited at great length, but the foregoing cases are typical and state the rule which seems to be sustained by the great weight of authority both of decisions and elementary text-writers. We cannot, without unduly extending this opinion, undertake to analyze the large number of cases cited by appellant. We have examined them, however, and find that they are distinguishable. In some of the cases relied upon there was a voluntary dismissal by the plaintiff in which the defendant took no part. In some the plaintiff confessed the wrongfulness of the injunction. In some there was a trial on the merits in the injunction case, and in yet others there is language which, if taken abstractly, would seem to support appellant's contention, but the facts are so materially different that the cases are not apposite here. There is one case, however, upon which appellant relies with so much confidence that we feel it should be noticed, especially in view of the fact that it is a decision of the Supreme Court of the United States. That case is Tullock v. Mulvane, 184 U. S. 497, 22 S. Ct. 372, 46 L. Ed.

657. The case was the culmination of a protracted and complicated litigation originating in the state of Kansas. See Tullock v. Mulvane, 61 Kan. 650, 60 P. 749, and the same case 58 Kan. 622, 50 P. 897. To gain a proper grasp of the background of the decision it is necessary to look into the history of the case and the peculiar facts which gave rise to it. Counsel for appellees with commendable industry and patience have analyzed the litigation with great care, and we find ourselves in complete accord with their conclusion as stated in the brief in this language: "The Supreme Court of the United States had before it this situation: An equity suit was brought in the Circuit Court for the Kansas district in which a temporary restraining order was issued without a bond, but in lieu thereof a deposit of $75,000.00 was made. The defendants moved to dissolve this temporary injunction and this motion was allowed. Thereafter the injunction bond in question was filed; thereafter a stipulation was entered into between the plaintiff and certain of the defendants whereby the case was dismissed as to all of the defendants except Mulvane, who was not a party to the stipulation. The case was tried out and Mulvane prevailed and brought the action upon the injunction bond. His damages were accrued before the bond was given. The consideration for giving the bond was the privilege of withdrawing the deposit. * * * The stipulation of the parties who signed it expressly reserved all of the rights of Mulvane against the complainant in that or any other action."

The foregoing accurate analysis of the situation shows clearly, we think, that the case has no bearing on the question presented in the case now before us. From a careful study of the authorities we are satisfied that, where an action involving an injunction is dismissed as the result of the voluntary and amicable agreement of the parties, the defendant in the cause may not thereafter maintain an action against the sureties on the injunction bond, even though the bond, by its terms, does not require that the wrongfulness of the injunction shall be determined in the suit in which it was given.

The judgment of the District Court was correct and is affirmed.